Three cases this morning for oral argument, and the first one is Yon v. Attorney General, number 09-1796. Mr. Antonoffy? Thank you, Your Honor. Am I pronouncing that correctly? Yes, Your Honor. And Mr. Markell, you can come up. Yes, sir. Good morning. May I please have the Court? I'd pick that microphone if you would, please. Sure. May I please have the Court? My name is Robert Antonoffy, and I represent the petitioner in this case. I would like to take this opportunity to request three minutes for rebuttal. That's fine. Just be sure to speak up because you are being recorded. Thank you, Your Honor. At this time, the petitioner would like to request a remand to the Board of Immigration Appeals on two basic issues. The first is whether or not the one-year bar is applicable in exclusion proceedings. The petitioner argues that based on the analysis found in the Landgraf and Aviglia cases – Well, which were you arguing? It was a little confusing there. Were you arguing the constitutional problem with retroactivity, or were you trying to distinguish between a person who's arrived and is subject to those proceedings and a person that hasn't arrived? Or just to add on to that, I thought what you were trying to do was distinguish between the pre-'96 changes between exclusion and removal. I'm not sure that that works, but that's what I thought you were trying to do. Yes, Your Honor. What would a remand get you? Well, first of all, I would ask for a Ventura-type remand because the analysis by the Board is the functional equivalent of no analysis. They just state we find no persuasive authority to justify – Well, what is the authority textually between exclusion and the other? I mean – Well, the statute, the one-year bar, we submit is prospective in its language, and that to apply it to exclusion proceedings would be unfair because at the time she entered the country, at the time she filed her initial asylum application, the one-year bar did not exist. And there's nothing in the statute that states it would be retroactive in nature. But for those who were pre-the change – change is what, April of 96? Yes. And you had – for those folks, they had until April 1 of 97. I mean, this person was in the country without a visa, right? That's correct. So she had until April 1 of 97 at the outside, and she didn't do anything. For the one-year, but there's no indication that those changes would apply to her. Why not? Why not? Because there's nothing in the statute that specifically states it. There's a presumption that it's not. It's pretty broadly written. But isn't also in the regulations? Well, the regulations are simply prospective. What makes you think the regulations are prospective? Because it talks about exclusion, and exclusion was really eliminated as a term, I should say, not a concept, but a term in 96. Yes. It was eliminated, but my client was still under the force and effect of an exclusion order. I mean, at 8 CFR Section 1208.4b.3, it talks about during exclusion proceedings and then into the lies after completion of exclusion. So if those were eliminated as terms in 96 and the regulations mention exclusion, it obviously means that it relates back, or it seems to. It relates back, but it seems to. Had Congress intended to apply the one-year bar to exclusion proceedings, it would have stated so. I mean, it is broadly created. But the regulations, I mean, what would make you think that these regulations are somehow so off the mark that we don't give them deference? Well, there's no deference because they don't specifically relate to the one-year filing. They don't state that the one-year bar applies to persons in exclusion proceedings. That's the sum and substance of our contention, that in the absence that you can't apply the one-year bar retroactively. It's broader than that, right? I mean, it doesn't have to say every type of, you know, it doesn't have to say exclusion, does it? I would submit, yes, it would. Yes, it would. It would. It would because there's a, you know, in the absence of language to the contrary, the presumption is that it's not retroactive. There's nothing cited by the government. But the government, I mean, just my guess is their argument would be, look, you're saying that there was silence. They've got the regulation on their side. The argument that they would say, okay, what is it that is in the statute that tells you that somehow exclusion proceedings are exempted from the one-year limitation period for asylum? Our position is that argument is non-responsive to the retroactive analysis. In addition, this was not analyzed by the BIA. The BIA just basically said we find no persuasive authority. In doing so, they've actually divested this court of proper review. I would submit that minimally that a Ventura-type remand would be appropriate to have the BIA explain itself. I don't think that's an overreaching argument. Given the broadness of the statute, you know. That's a matter of legal interpretation. As a practical. Yeah, that's why I asked why would you want a remand. As a practical matter, the BIA hasn't given you sufficient grounds for you to give them deference here. The regulations are broadly drafted. They don't address the issue. I would submit that minimally a remand would be appropriate for the board to explain and make what would be concededly binding or at least arguably binding findings under Chevron. They've done that. They haven't done that here. They've issued this conclusory paragraph. We reviewed the NOVO, the conclusions. Well, I don't know. Why would we need to have them pass on that again? And why did you just raise it now at the last minute? Well, you know, I'm not raising it at the last minute. The brief sort of says it. It asks for a remand. It talks about the prospective analysis. You look at the findings. I mean, I don't think it's all that off the mark. You know, I'm using it as a vehicle for which the court might want to look at this. I mean, we really don't have anything that specifically states that. I've looked. I've had no authority in any other circuits. How about the Seventh Circuit in LaSez? Pardon me? In LaSez, the Seventh Circuit. I'm not familiar with the case. Not familiar with it? L-A-S-Z-C-Z, 2004. It doesn't ring a bell? No. Did you raise this issue before the BIA? Yes, Your Honor. Okay. I mean, when you look at it here, here's a person who came in in 92 without a visa, and there's a law passed in 96. In fact, she's in an exclusion proceeding that she isn't there for, but she claims she didn't get notice. And then when you pass a law in 96 and then the regulations say it applies to everyone and the law doesn't say anything that it doesn't apply to everyone, and to make it fair for those who may have a problem, you give them a full year from the time of the passage of the law, and that full year expires on April 197. Post-April 197, you're throwing yourself on the mercy of the immigration court to show some type of changed country conditions, right? Well, changed country conditions. I mean, that's the only way you get around the year. The year, yeah. Changed country. Well, actually, change in any circumstances. It's not changed country conditions, it's changed circumstances. Changed circumstances. Yeah, changed circumstances. And country conditions are part of it. But I would also concede that that analysis is not before the court and would not be properly raised before the court. You wouldn't have jurisdiction over it. My contention is that given the broadness of the statute, given the fact that it's not specifically stated, I would suggest minimally that a Ventura remand would be appropriate. If Congress intended for the one-year bar to apply to people who were in exclusion proceedings, given the fact that they go on for years, Congress could have clearly stated so and hasn't. They know how to do it. They know how to make statutes retroactive. They didn't do it. By the way, the BIA certainly did mention Exhibit 11 in its decision, didn't it? Oh, it does, in a cursory format, very cursory. Like a rubber stamp. Also, it doesn't mention the other record evidence, the Aird Affidavit, which is 694 of the record. Well, they found some problems with some of the things, with authentication and things like that, didn't they? Yes, Your Honor. So it might have been a brief reference, but nevertheless they gave a rationale. It's so cursory, it's a functional component. Do you want them simply just to give you a rubber stamp, saying we give it less weight and rubber stamp it? We've been getting rubber stamps from the BIA. I mean, no disrespect to anybody or the BIA. That's really what it is. I mean, the certificate says that you shall be targeted. Didn't your brief say that they didn't consider it at all? I'm looking at the BIA's decision. I mean, again, it's cursory, but, you know, it compares that with the other record evidence. I mean, they gave it some play, didn't they? Almost none. I mean, your brief reads as though they said it's not authenticated and we won't consider it. Well, IJ leads. It looks like they waited in some way. But they did it in cursory form. There's no explanation. I mean, if that's the case in our public policy, the BIA will pick up on this, and they'll never really analyze these issues. I mean, just as a practical matter, you know, in the record, the IJ had stated that the information from Fujian province couldn't be considered because it's a different province. And I'm not arguing with that. What I am arguing is that that evidence was authenticated, and that tells us that this type of thing does go on, that people are targeted. So what I'm saying is to have simply a cursory explanation, you know, which is a function of no explanation by the board, by the agency charged with this scenario, with handling these matters, it's against public policy. And then a remand minimally for A, for the board to explain itself as to the application of the one-year issue to an exclusion case. In addition, the evidence in this case, the record evidence in this case, which I submit is not just the unauthenticated committee notice. There's other evidence. There's the aired affidavit in conjunction. I think that that was part of the record evidence. It wasn't considered by the IJ or the BIA. Do we have jurisdiction to review the changed circumstances termination? You have jurisdiction over questions of law and the Constitution. The cases that are cited in the briefs here, they seem to parse out where questions of law under the one-year issue would be applicable, questions of discretion, such as whether or not the change circumstances had been effectuated would not be. So our position is the fact that the one-year issue, whether or not the one-year issue applies to exclusion proceedings is a question of law and the court does have jurisdiction. Thank you. Thank you. Mr. Markell. Good morning, Your Honors. May it please the court. My name is Justin Markell and I represent the Attorney General in this matter. Could IRA or however you pronounce that acronym, could that constitutionally apply to prior conduct? Yes, Your Honor. If you're referring to the exclude, whether or not the one-year bar, yes, Your Honor, we believe it does. And just to pick up right where you guys left off earlier, uh, in IRIRA Congress limited, uh, portions of it. For example, the judicial review provision, uh, now find that INA 242 only two proceedings initiated by notices appear after, uh, 1997, which shows that Congress is aware of that. And after 1997, everything was, uh, removal proceedings. So it shows that Congress is aware that they could kind of divide up and say these things apply here and these things apply there. And they chose not to with, uh, the one-year asylum bar, because it just applies to asylum bar, uh, asylum wherever you file it, whenever you file it. So in, Your Honor, our position with the one-year bar. How do you react to his argument that, you know, hey, this thing's been going on since well before IRIRA, um, you know, and the rules should apply as, as of when, I guess, the proceedings first started. Whether, well, I think that, that, uh, line of argument is faulty in a number of reasons. First of all, first of all, this petitioner doesn't have any right to file for asylum. It's a discretionary form of relief. The board, the immigration judge can deny it at any time. So the idea of some type of retroactive taking of a right that this petitioner has is just not at issue. She never had a right to file asylum. Also, there's also the change of circumstances, which is kind of the catchall. If she would have just simply filed her, uh, asylum application within a year of having the second child, it's very likely that the board would have, uh, reopened. She waited six years. She waited six years instead. So it's our position that, you know, this is, and, and also the regulations require, require that you file within a reasonable time of the, uh, changed circumstances. And as an immigration judge and board both agreed six years was not a reasonable time. The only other issue in this case was the issues that y'all touched on. Before you go, Judge Van Antwerpen mentioned, uh, the Las's case from the seventh circuit. Your Honor, I'm not familiar or familiar with that case either. It wasn't briefed by either party. 381 F third six 11. Okay. Uh, it was, it was an immigration case and they said basically under somewhat similar circumstances that, uh, the filing of a new proceeding terminated the old order, but they said basically that you didn't look to the prior law. You're governed by the new proceedings. It held against retroactive. Yeah, sure. And that makes sense in the government's pain. And as you also pointed out that the argument, there's only, excuse me, one argument regarding to, uh, the board's alternative finding, whether or not petitioners, uh, demonstrate a well-founded fear of persecution and petitioner only argues that the board didn't consider this, uh, village notice and give it any weight, which as you all pointed out, the board most certainly explicitly referred to it and then said that they were less persuasive than the other documents that are on record. Did you present any evidence that the, to the board, that the certificate was not authentic? Uh, no, your honor. I don't, I don't think, uh, the government submit anything to demonstrate that it wasn't authentic, but the burdens on the petitioner to demonstrate that it is authentic. It's not on the government to prove that it's not authentic. I mean, when you, when you look at the village letter, that any Chinese citizen who already gave birth to one child is a target for IUD insertion. Those who already have two children are targets for sterilization, who must be, probably which must be performed sterilization. It sounds like which must be performed. Uh, and then it says any Chinese resident who gives birth abroad upon returning to China is going to be treated as a Chinese citizen. If you're in this, if you're in the petitioner's status here, uh, don't you think that's going to be a real problem if you go back? Your honor, are you referencing the 2007 letter that exhibited 11? I'm exhibiting the village letter. I think it's exhibit 11. It's at 422 of the appendix. Yes, sir. Uh, yes, your honor. Uh, it's government's position that, that, that whole, uh, a phrase is, is, is upon registering the child in the household. And in this case, petitioner hasn't demonstrated that not registering the child will somehow be, uh, so overwhelmingly, uh, costly that it would be persecution of some other type economic persecution. So it's the government's position that it's really the registration that triggers the child counting. And this, this court has, has, uh, acknowledged the reasonable ability of this, uh, but you have to register the child in order for the child to go to school, don't you? Well, your honor, it's unclear. There's a, the 2007 country report indicates that there's 150 million people that are so called part of the floating population that move throughout China finding work and so on. Uh, the, the call and also petitioner hasn't really argued what the consequences would be of, of not registering the children. So it's not really before this court, they didn't argue to the board. They didn't say that the consequences of registering the, not registering the child would be somehow, uh, prohibitive. I have a, I have a question for you. Um, I just did out of curiosity, cause I can't determine it from what I've seen in the record. Uh, in May of, of, uh, 93, she filed a, uh, an asylum petition, I guess through a travel agent. Whatever happened to that? Was that ever adjudicated or did you just sort of die in the vine? No, your honor. And it's, uh, but it was filed with the clerk of the court. Yeah, it was filed and it was indicated. So there was a letter in the record from DHS that went to petitioner indicating that, uh, this earlier asylum application was actually filed because there's no file stamp on the copy of the asylum application we have. So that letter indicates that DHS did in fact receive the asylum application. When the proceedings were reopened, it looked like the immigration judge took the position that the earlier asylum application was fraudulent in part based on, uh, she did not make a frivolous finding. She just essentially said, but the motion reopened happened 13 years later. What happened to the, Oh, well, she failed to appear your honor. I'm sorry. She failed to appear. But that was in 1990. That was earlier in 93. They had the deep, the, uh, in absentia order of deport. Then after that she filed a, uh, uh, through a travel agent. Once afterwards you had the, the, in absentia, I think in February of 93. As far as I know, she claims that she's never been ill. She's never been in contact with DHS. Uh, so if there were other proceedings, there's nothing on the record indicating that there was any other proceedings and there's nothing on the record that she received. And she also didn't know about it. Yeah. Yes, your honor. She, she claims that she didn't know about any proceedings that happened. Did she have to actively prosecute that or to move ahead administratively? No, your honor. They, they, they would have scheduled what might've happened. They might've found that a petitioner had already failed to appear and that there was order of removal and they just didn't. Okay. What really happened in the 1990s is nothing happened. That's why you had 65,000, uh, uh, applications and proceedings backed up after nine 11. We've had cases before us that literally have been over 10 years from when the government, even when the government files something before it, it somehow reaches the end of the line. Anyway, it's not, it's not so much the case now. You're opposed to remand at this time. Oh yes, your honor. We are. We believe the petition for review overview should be denied because not only did petitioner failed to demonstrate that the board aired when it found that the one year bar applies to exclusion proceedings, but he also failed to demonstrate that the board aired when it determined that he does not have a well-founded fear of persecution. The government will rest. I have no further questions. Thank you. Thank you. Mr. Antonoff. Addressing the, um, the statutory question with respect to the one year bar, um, the section two 42 has raised by the government and it's brief and an oral argument. Um, I would argue that, uh, counter argue that Congress, Congress knew, knew that exclusion, exclusion proceedings, um, you know, could interplay with asylum cases and they chose not to act. And I would submit to the silence should in your in favor of the, uh, of the petitioner. Um, in addition, um, I'd like to simply look at the record as a court to look at the record evidence and, uh, we have looked at the evidence. I mean, the problem here is you've got a, a major procedural problem in that one does the, uh, one year apply to her and you've got a regulation saying that it does. You're saying somehow that's wrong. Then the question is, if you lose on that, what happens when the, uh, basically the BIA says that we are not going to exercise discretion here to re to reopen because she waited for so long after the birth of her second child. And I'm not sure we have jurisdiction of that over that. You don't, you don't, that, that, that squarely falls within the province of the BIA and the only argument you really have is, can you say that somehow the asylum, the stat IRIRA in 96 does not apply to one who was there to for in a exclusion proceeding and they would have to, our position is that there would have to be statutory, uh, or, and regulatory, uh, uh, you know, uh, findings to, to, that on that issue, they have to be language in the statute that says that says that it's not there and the statute as it's read it, it's prospective only, you know, so you're, you're, it's operating somewhere in a, in a, in somewhat of a, uh, a vacuum. Neither, neither party introduced any information concerning legislative histories or anything like that that would be helpful to the court and make and rendering that analysis, you know, which only I think only makes things a little worse. I submit that a remand to the board would be appropriate as to the question of whether or not, uh, they would find for her, um, based on the one year bar assuming that does apply or assuming that changes circumstances. If the, if, if, if applying the BIA analysis, applying the retroactive analysis, the BIA did find that, uh, it was not applicable, then it wouldn't be futile to, uh, to remand the case down. Right? I mean, if they said, disagree with you that the, if they disagree with me, it would be applies to everyone that then she doesn't, we should have legitimate findings here. I mean, uh, Ventura remand, as a matter of public policy, you know, the agency is in the best position to run, to make this kind of determination and not the court granted the court has to novel review, but as a matter of policy, you know, that, that determination. In light of the regulation, do you have any doubt as to what the agency would decide here? The BIA? I mean, it's, it's flat dab right in the regulation 1258. It does. What would make you think that the BIA would go against that? I've just, I would just submit that it's fundamentally unfair. It changes the position from the time my client filed her asylum applications is that filing application triggers it under the statutory framework. Um, we've had such a change in law and it would be fundamentally unfair, you know, for her to, uh, to be there. I understand that. And it's not a bad argument. The flip to that is that it's, it's, it's not fair that or not equitable that she waited so long after the birth of her second child. One could argue she should have gone back further, but that the way six years, uh, we don't have discretion, uh, we don't have the authority to make that determination. We don't have the appellate jurisdiction. You don't. Um, the only argument I could make, and I heard you talk about all the backlog in cases, um, a remand in cases like this, given the fact that she, look, she comes to the United States, she's here in 92, she's ordered removed in 93, she's still here. By sending it back to the government, by sending it back to them, what you'd be doing is give the government more incentive to be more aggressive in their enforcement. No one's ever made that argument. Is her husband also in exclusion proceedings? Pardon me? Is her husband also in removal proceedings? Uh, I think he was ordered excluded, which means he's been ordered, you know, removed or, or, you know, that's why I didn't testify at the hearing. Um, so I have nothing further. Okay. Thank you. Thank you very much. Thank you to both counsel. We'll take the matter under advisement.